UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION |
| | ) |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | )    FILE NO.: _____ |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff Nationstar Mortgage LLC for its complaint against Fidelity National Title Insurance Company respectfully states as follows:

### Nature of the Case

1.  This is an action for breach of contract and bad faith failure to pay a claim on a closing protection letter issued by Fidelity National Title Insurance Company's approved attorney in connection with a sham residential loan transaction.

### Parties

2.  Plaintiff Nationstar Mortgage LLC ("Nationstar") is a Delaware limited liability company.[1]

---

[1] Nationstar Mortgage LLC is a wholly owned subsidiary of Nationstar Mortgage Holdings, Inc., a Delaware corporation.

3. Fidelity National Title Insurance Company ("Fidelity") is a California corporation with its principal place of business located in Santa Barbara, California.

## Jurisdiction and Venue

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Fidelity is not a citizen of any state in which the members of Nationstar are citizens,[2] and the amount in controversy, without interest, cost, or attorney's fees exceeds the amount specified by 28 U.S.C. § 1332.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Facts

6. In 2004, John Bryson ("Bryson") purchased the home and real property having a street address of 380 Clark Creek Pass, Acworth, Georgia 30102 ("380 Clark Creek") using loans in the amount of $786,000.00 and $98,300.00 from GreenPoint Mortgage Funding, Inc., (the "GreenPoint Loans"). Nationstar is informed and believes, and upon such information and belief alleges, that Bryson gave GreenPoint and its successors and assigns liens on 380 Clark Creek as security for the GreenPoint Loans (the "Senior Liens").

---

[2] Plaintiff Nationstar is a Delaware limited liability company. Nationstar's members are Nationstar Sub1 LLC and Nationstar Sub2 LLC, both Delaware limited liability companies. Nationstar Sub1 LLC and Nationstar Sub2 LLC are wholly owned by Nationstar Mortgage Holdings, Inc., a Delaware corporation with its principal place of business in Texas. Nationstar is therefore a citizen of Delaware and Texas. Fidelity is a resident of California. Complete diversity between Nationstar and Fidelity exists.

1833170v.1 IMANAGE 106040

7. Security deeds from Bryson to GreenPoint and its successors and assigns, which evidence the Senior Liens encumbering 380 Clark Creek, were filed August 12, 2004, in Deed Book 7296, Page 313, and Deed Book 7296, Page 333, Cherokee County, Georgia Records, respectively.

8. Nationstar is informed and believes, and upon such information and belief alleges, that, in 2006, Craig Cottrell and his wife, Andrea, (collectively, the "Cottrells") met a Georgia attorney named Robert P. Copeland ("Copeland").

9. Nationstar is informed and believes, and upon such information and belief alleges, that after meeting with Copeland, the Cottrells agreed to purchase some investment homes in Georgia with Copeland's assistance.

10. Nationstar is informed and believes, and upon such information and belief alleges, that Bryson had 380 Clark Creek listed for sale at the time.

11. Nationstar is informed and believes, and upon such information and belief alleges, that 380 Clark Creek happened to be one of the investment homes the Cottrells decided to purchase. Nationstar is informed and believes, and upon such information and belief alleges, that, in 2006, the Cottrells agreed to the purchase 380 Clark Creek from Bryson for $1,000,000.00.

12. To fund the purchase of 380 Clark Creek, Mr. Cottrell obtained a loan in the amount of $800,000.00 from First Magnus Financial Corporation, an Arizona Corporation, (hereinafter referred to as the "Cottrell Loan").[3]

13. The sale of 380 Clark Creek closed on September 19, 2006. In connection with the closing, Mr. Cottrell executed, among other documents, a promissory note (the "Note") and security deed (the "Security Deed") evidencing the Cottrell Loan and lien on the Property in favor of Mortgage Electronic Registration Systems, Inc., ("MERS") (solely as nominee for First Magnus and its successors and assigns) and MERS's successors and assigns. A true and correct copy of the Note, which was subsequently endorsed to blank, and the Security Deed are attached hereto as Exhibits B and C and incorporated herein by reference.

14. Fidelity's approved attorney and settlement agent, Copeland, issued a Closing Protection Letter (the "CPL") to "[First Magnus], it's [sic] successors and/or assigns as their interests may appear" in connection with the closing of the sale of the Property to Mr. Cottrell. A true and correct copy of the CPL is attached hereto as Exhibit D and incorporated by reference. Hereinafter, First Magnus and its successors and/or assigns shall be referred to collectively as the "Insured."

---

[3] Mr. Cottrell also obtained subordinate financing of approximately $200,000.00 to purchase the Property.

15. By the terms of the CPL, Fidelity agreed to indemnify the Insured for actual loss incurred in connection with the closing if such loss arises out of Fidelity's authorized agent or approved attorney (a) failing to follow written closing instructions, which failure affects the validity, enforceability, or effectiveness of the Insured's lien, or (b) committing fraud in the handling of the Insured's funds or documents to the extent such fraud affects the status of title to the Property or to the validity, enforceability, and priority of the Insured's lien. *See* Exhibit D.

16. The HUD-1 Settlement Statement for the sale of 380 Clark Creek to Mr. Cottrell (the "HUD-1") shows a significant portion – if not all – of the proceeds from the Cottrell Loan were intended to pay off the GreenPoint Loans. A true and correct copy of the HUD-1 is attached hereto as Exhibit A and incorporated herein by reference. Satisfying the GreenPoint loans was necessary to obtain good, clear title to the Property through releases of the Senior Liens.

17. But instead of paying off the GreenPoint Loans and obtaining releases of the Senior Liens, Copeland stole the money he received from the Cottrell Loan and, on information and belief, diverted the money as part of a larger "Ponzi" scheme.

18. Consequently, the Senior Liens securing the GreenPoint Loans remained as encumbrances on the Property, and the lien in favor of the

Insured remained subordinate to the Senior Liens. Nationstar is informed and believes, and upon such information and belief alleges, that Copeland provided Mr. Cottrell with false documents tricking Mr. Cottrell into believing he purchased the Property and had good, clear title to the Property.

19.   After the closing, the Cottrell Loan – and the beneficial rights thereto – was sold to Lehman Brothers Bank, F.S.B., (Lehman Brother Bank, F.S.B., was a subsidiary of Lehman Brothers Holdings, Inc. ("LBHI")) pooled with other mortgage loans in a securitization transaction by LBHI, and sold by LBHI into a trust – the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-17 (the 'Trust").[4] The Trust is the successor to First Magnus. Fidelity's obligations under the CPL therefore inure to the Trust as the Insured.

20.   Nationstar is informed and believes, and upon such information and belief alleges, that the Cottrells discovered Copeland's fraud in the Spring of 2009.[5] Thereafter, Mr. Cottrell contacted Aurora Loan Services LLC ("ALS") – the mortgage servicer for the Cottrell Loan at that time – about

---

[4] Citibank, N.A., at all relevant times has been the Trustee for the Trust.

[5] On April 9, 2009, the United States Attorney for the Northern District of Georgia filed a criminal information against Copeland. The information alleged that Copeland knowingly and willfully devised and intended to devise a "Ponzi" scheme to defraud investors of money and property by making materially false and fraudulent representations to investors. This conduct, according to the information, defrauded more than 125 individuals out of more than $28 million. On April 20, 2009, Copeland pled guilty, and a judgment was entered against Copeland sentencing him to 121 months in federal prison, ordering him to pay $31,861,360 in restitution, and directing that he serve a three year period of supervised release upon being released from prison.

Copeland's scam.[6] Mr. Cottrell, understandably, also stopped paying on his loan in the Spring of 2009.

21.     On or about July 16, 2009, ALS, by and through its attorneys, filed a claim with Fidelity giving notice of the issues involving the Senior Liens and the Trust's lien.[7] ALS followed-up with Fidelity through a letter sent by e-mail on July 24, 2009. Fidelity acknowledged receipt of the claim in a letter dated July 27, 2009.

22.     Prior to ALS filing its claim with Fidelity, GreenPoint's successor initiated foreclosure proceedings related to the GreenPoint Loans. GreenPoint's successor foreclosed the Property on August 4, 2009. Nationstar is informed and believes, and upon such information and belief alleges, that despite knowing about the serious issues affecting the Insured's lien on the Property, Fidelity did nothing to stop the foreclosure of the Property.

23.     Copeland's actions led to the August 4, 2009, foreclosure of the Property that wiped out the Trust's lien on the Property, *i.e.* the Trust's security for default on the Cottrell Loan. Unfortunately, the Trust is left without any recourse against the Property. Copeland's actions wiped away any chance the Trust would see the monetary benefits from the Cottrell Loan.

---

[6] At all relevant times through July of 2012, ALS was a subsidiary of Aurora Bank, F.S.B., f/k/a Lehman Brothers Bank, F.S.B., n/k/a Aurora Commercial Corporation. At all relevant times through July of 2012, ALS acted as servicer for the Cottrell Loan, and, as servicer, ALS was clothed with authority to act on behalf of the Trustee and the Trust.

24. Servicing of the Cottrell Loan, which includes the right to pursue the claim with Fidelity on behalf of the Trustee and Trust, transferred from ALS to Nationstar in July of 2012.

25. Since ALS filed the claim with Fidelity on or about July 16, 2009, Fidelity became aware of Copeland's unlawful acts, and ALS and Nationstar have endeavored in good faith to supply Fidelity with information they allegedly require to determine ALS's and Nationstar's "standing" to pursue the claim and to evaluate the loss. But Fidelity, without any credible justification, stalled payment on the claim for over four (4) years knowing that ALS possessed "standing" to prosecute the claim. And when Fidelity finally made Nationstar an offer to settle more than four (4) years after the claim was filed, Fidelity offered an amount approximately $442,000.00 below the Trust's minimum actual loss.

26. Fidelity's tactics constitute a breach of the CPL and bad faith and have compelled Nationstar to file this suit to recover all the monies owed to the Trust.

## Causes of Action

### Count I
### Breach of Contract

27. Paragraphs seven (7) through twenty-six (26) are incorporated by reference.

28. The CPL formed a contract between Fidelity and the Insured in which Fidelity agreed to indemnify the Insured for its actual losses caused by Copeland's – Fidelity's approved attorney – criminal acts and defalcation of loan monies. The Trust is the Insured. Because Copeland stole the Cottrell Loan money, the GreenPoint Loans were never paid off; the Cottrells never obtained good, clean title to the Property; GreenPoint's successor foreclosed the Property wiping out the Trust's lien; the Cottrells were dispossessed of any interest in or rental income from the Property; and the Cottrells stopped paying on their loan. Copeland's actions caused the Trust to lose the entire monetary benefit of the Cottrell Loan. Fidelity breached the CPL by failing to timely and fully pay for the Trust's actual loss. The Trust suffered and continues to suffer damages in excess of $800,000.00 plus pre-judgment interest on its actual loss pursuant to O.C.G.A. § 13-6-13 and O.C.G.A. § 7-4-2(a).

29. Fidelity has refused in bad faith to pay the Trust for its actual loss and caused the unnecessary trouble and expense of filing this lawsuit. Under O.C.G.A. § 13-6-11, Fidelity is liable to the Trust for the Trust's litigation expenses, including its attorney's fees and costs.

## JURY DEMAND

30. Nationstar hereby demands a trial by jury in this case, and tenders the requisite fee.

WHEREFORE, PREMISES CONSIDERED, Nationstar respectfully requests that Defendant Fidelity be cited to appear and answer, and, upon final consideration, Nationstar recover judgment against Fidelity for the amount of its actual loss, pre-judgment interest, post-judgment interest, and attorney's fees and costs and such other and further relief to which Nationstar may show itself to be justly entitled.

    Respectfully submitted,

    **BEIRNE MAYNARD & PARSONS L.L.P.**

    s/ Donald P. Walker
    Donald P. Walker
    Georgia Bar No. 326011
    Texas Bar No. 24081196
    1300 Post Oak Boulevard, Suite 2500
    Houston, Texas 77056
    (713) 623-0887 – Telephone
    (713) 960-7324 – Direct
    (713) 960-1527 – Facsimile

    **ATTORNEYS FOR PLAINTIFF**
    **NATIONSTAR MORTGAGE LLC**